bank it was necessary to have the notes renewed until the final adjustment of the affairs of the testator.

The question of practice is a troublesome one. The power of sale given to the executor is a discretionary, restrictive authority (In re Johnson, 18 App. Div. 371, 46 N. Y. Supp. 53; In re Gantert, 136 N. Y. 106, 32 N. E. 551), so that he could not, by action, be compelled to sell the real estate for the payment of the debts. The plaintiff and those similarly situated could not resort to the surrogate's court to sell or mortgage the Saxony Knitting Mills property, as it was expressly charged with payment of their debts. Code Civ. Proc. § 2749. The other creditors could institute the proceeding designed for that purpose, and the surrogate's court acquired jurisdiction by the filing of their petition, and properly exercised it. The plaintiff can maintain this action to establish the validity and extent of its lien. Hogan v. Kavanaugh, 138 N. Y. 417, 421, 34 N. E. 292; Dunning v. Dunning, 82 Hun, 467, 31 N. Y. Supp. 719. We have, therefore, the proceeding in surrogate's court as the proper tribunal, and a suit in equity likewise properly commenced; but it would be unwise to carry on the two to a sale. As all the parties are before each court, we can see no harm in adjudging and deciding in this case: (1) That the claims of the plaintiff and of the other creditors similarly situated are an express charge upon the Saxony Knitting Mills, but with no preference over the unsecured debts of the testator; (2) that this action be held in abeyance until the claims of all the creditors have been proven in the surrogate's court, including the claim of the plaintiff and others in the same category; that, upon the entry of the decree establishing said claims and decreeing a sale, this action be discontinued, without costs to either party, and that the lands of the decedent be sold, pursuant to the decree of the surrogate's court in the proceeding there pending, and the order of the sale be determined and decreed by the said court.

Judgment reversed, and new trial ordered. So ordered. All concur. The order is to be settled before Justice SPRING on two days' notice in case of disagreement.

---

### ONONDAGA NATION et al. v. THATCHER.

(Supreme Court, Appellate Division, Fourth Department. July 24, 1900.)

1. INDIANS—CAPACITY TO SUE IN EQUITY FOR PERSONALTY.

In the absence of statutory authority, a suit in equity to recover personalty cannot be maintained by individual members of an Indian tribe in its behalf.

2. STATE UNIVERSITY—POWER.

The University of the State of New York has no statutory right or power to be constituted a wampum keeper for an Indian confederacy or for a tribe, though it is authorized to have a museum and to acquire title to such articles as wampum belts.

3. WAMPUM BELTS—TITLE.

Wampum belts, used by a confederacy of Indian tribes, and intrusted by it to the care and custody of one of the tribes, which appointed one of its members wampum keeper, were sold by him many years after the dissolution of the confederacy, and were afterwards purchased by defendant,

whose claim of title commenced with the wampum keeper, who had possession of them for years prior to such sale, and delivered them with such title as he had at the time of the sale, which occurred seven years before the chiefs of the tribe intrusted with their care transferred "all wampum belts of which it ever had or was entitled to possession, and all its rights, title, and interest to any wampum anywhere," to a university authorized by law to maintain a museum and to purchase such articles. There was no satisfactory proof of any ownership by the parties who made the transfer to the university, or that they had any authority to represent the confederacy or the tribe as the alleged owners of the belts. *Held*, in an action in equity to recover possession thereof, that defendant's title was superior to that claimed by the university, and that it could not recover.

Appeal from special term, Onondaga county.

Action by the Onondaga Nation and another against John Boyd Thatcher. From a judgment dismissing the complaint (61 N. Y. Supp. 1027), plaintiffs appeal. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Edward Winslow Paige, for appellants.
John A. Delehanty, for respondent.

WILLIAMS, J. The action was brought to recover possession of four wampum belts, and for equitable relief in reference thereto. The defendant claimed he acquired title to the belts from Rev. Dr. Oliver Crane March 24, 1893; that Dr. Crane acquired title thereto from Henry B. Carrington, of the United States army, in the month of July, 1892; and that Carrington acquired title thereto from Thomas Webster, a member of the Onondaga tribe of Indians, living on the Onondaga reservation, in the state of New York, on the 10th day of February, 1891. The claim made by the plaintiffs was that, at the time Webster assumed to sell the belts to Carrington, they were not the property of Webster, and he had no power to sell or transfer title thereto, but that they belonged to a confederacy of Iroquois Indians. The trial court dismissed the complaint, holding that plaintiffs had no right to maintain such an action, and that the defendant had good title to the belts.

As to the right of the plaintiffs to maintain such an action, we must hold, since the decision by the court of appeals of Johnson v. Railroad Co., 162 N. Y. 462, 56 N. E. 992, that the Indian plaintiffs cannot maintain the action. That was an action to recover real property (ejectment). This is one to recover personal property,— in form, in equity. But the principle is the same in both actions. It is said by appellants that this question was not properly raised as to the Indians brought in by the order of December 20, 1898. It seems to us that the real intention was to make the same answer to the additional Indian plaintiffs as was made to the original ones, and the action was apparently tried upon this theory. The bringing in of these parties was a matter of favor to the plaintiffs, and they should not be permitted to take advantage of any technical objection like this one. If necessary to correct the answer or order, it should be done by this court, under section 723 of the Code of Civil Procedure. More than this, the plaintiffs have given evidence that all title which the Indians had to these wampum belts has been trans-

ferred to the University of the State of New York. The only plain-
tiff which can by any possibility maintain this action, therefore, is·
the University of the State of New York. It undoubtedly has power
to bring actions generally. It is a corporation having capacity to
sue and be sued. It has a state museum, under chapter 378 of the
Laws of 1892, and an Indian section thereof, under chapter 586 of
the Laws of 1896; and it had power under the statute to acquire
title to such articles as these wampum belts, and to recover posses-
sion thereof by actions in the courts like the present one. It seems
to us ridiculous, however, to say that it could be constituted a wam-
pum keeper of any Indian tribe or confederacy. It was not an In-
dian, and had no statutory right or power to be constituted an Indian
or a wampum keeper, of the kind indicated by the evidence given in
the case. This claim is not worthy of any serious consideration.
The only question involved in the action is one of title to the wampum
belts,—which has superior title, the University of the State of New
York or the defendant. The source of the defendant's title has al-
ready been referred to. His chain of title commenced with Thomas
Webster, an Onondaga Indian, February 10, 1891. The chain from
that point is complete to the defendant. The University of the State
of New York claims title under a bill of sale made pursuant to a
resolution adopted by a meeting of the so-called Onondaga Nation
of Indians March 26, 1898. Two resolutions were passed at the
same meeting,—one, electing the University of the State of New
York wampum keeper; and the other, following the first, that the
Onondaga Nation sell to the University of the State of New York
all wampums, for $500, and that the sachems and chiefs present all
execute a bill of sale for the nation. Then the transfer was, in form,
that the Onondaga Nation sell, assign, transfer, and set over to the
University of the State of New York all wampum, in belts, strings,
or otherwise, of which it ever had or was entitled to possession, and
all its right, title, and interest to any and all wampums anywhere,
in consideration of $500; and it made the University of the State
of New York attorney of the Onondaga Nation and its sachems and
chiefs present, at its (the attorney's) own cost and expense to recover
the possession of the said wampum by suit or otherwise. The ques-
tion arises, as to this transfer, whether the parties assuming to make
the same had any title to the wampum belts in question, which they
transferred to the University of the State of New York. They had
no possession of the belts, at the time of making the transfer, which
could be said to be prima facie evidence of title, as in the case of
the transfer by Webster. He had possession of the belts in 1891,
and delivered them, with a transfer of such title as he had, more than
seven years before the transfer to the University of the State of New
York. The trial court, upon evidence apparently satisfactory to itself,
found the early existence of the Indian confederacy; that it had
wampum belts; that the care and custody thereof were intrusted to
the Onondaga Nation, which appointed one of its members wampum
keeper; and that the belts in question were at one time a portion
of the belts belonging to the confederacy. But it found that this
confederacy many years prior to February 10, 1891, the date of the

transfer by Webster, was dissolved, and thereafter had no existence, the use of the belts had become obsolete, and they nothing more than curiosities and relics of a time, condition, and confederation which had ceased to exist, and that the office of wampum keeper had been abrogated; that Webster was never a wampum keeper, but in some way became possessed of and the owner of the belts in question long before he made the transfer thereof in 1891. While we should not be prepared to give our assent to all these findings, upon the evidence, as original propositions, yet we need not go into the details of the conclusions arrived at, inasmuch as the ownership of the belts by Webster is found upon adequate evidence, and that defeats all claim of title thereto by the University of the State of New York under the pretended transfer to it in 1898. There is proof of Webster's ownership of the belts, in the fact of his possession thereof, independent of any proof of his having been a wampum keeper, for years prior to his transfer thereof in 1891. There is no satisfactory proof of any ownership by the parties making the transfer of 1898, or authority to act for the owners of the belts. The defendant has the possession of the belts under the Webster transfer in 1891, and the University of the State of New York must show a better title than defendant's before the court can award the belts to it. While the proof of any authority to represent the confederacy of Indians or the Onondaga Nation as the alleged owners of the belts is unsatisfactory, how can it be said that they had authority to sell and transfer the belts for a money consideration of $500 to the University of the State of New York? If there were any good purpose to be served, by allowing the Indians themselves to regain possession of the belts, we might struggle to reach such a result; but where the controversy is between other parties, who claim to have purchased the belts and paid their money therefor, then all question of sentiment is gone, and it is a mere question of title, to be determined upon the evidence, and we are unable to see any reason why we should reverse the trial court in its finding that Webster had good title to the belts when he made his transfer in 1891, or why we should not at least conclude ourselves that the University of the State of New York has failed satisfactorily to establish any better title under the transfer of 1898 than the defendant holds under his chain of title, which began in the Webster transfer of 1891. After an extended examination of the record, we conclude that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except McLENNAN, J., not voting.